UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:19-cr-00025 |
| Plaintiff, | Honorable Gordon J. Quist |
| v. | **MOTION TO ALLOW DEFENSE COUNSEL AT CIPA SECTION 2 HEARING** |
| MOHAMED SALAT HAJI and MOHAMUD ABDIKADIR MUSE, | |
| Defendants. | |

---

Mohamed Salat Haji, through his attorney Mary Chartier of Chartier & Nyamfukudza, P.L.C., and Mohamud Abdikadir Muse, through his attorney James K. Champion, move this Court to allow defense counsel to attend the *ex parte* hearing scheduled for September 26, 2019.

Respectfully submitted,

CHARTIER & NYAMFUKUDZA, P.L.C.

09/16/19                    /s/MARY CHARTIER
Date                        Mary Chartier


LAW OFFICES OF JAMES K. CHAMPION, P.L.L.C.

09/16/19                    /s/JAMES K. CHAMPION
Date                        James K. Champion

1

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:19-cr-00025 |
| Plaintiff, | Honorable Gordon J. Quist |
| v. | BRIEF IN SUPPORT OF MOTION TO ALLOW DEFENSE COUNSEL AT CIPA SECTION 2 HEARING |
| MOHAMED SALAT HAJI and MOHAMUD ABDIKADIR MUSE, | |
| Defendants. | |

Mohamed Salat Haji, through his attorney Mary Chartier of Chartier & Nyamfukudza, P.L.C., and Mohamud Abdikadir Muse, through his attorney James K. Champion, file this brief in support of their motion to allow defense counsel to attend the *ex parte* hearing scheduled for September 26, 2019.

## Analysis

**I.    The Section 2 hearing requested by the government should not be held *ex parte* because this would violate Mr. Haji's and Mr. Muse's constitutional rights to due process and effective assistance of counsel.**

Defense counsel should be permitted to attend the hearing scheduled for September 26, 2019. Due to the nature of this case, the government claims that classified material exists as part of the investigation, necessitating certain protocol to be followed. "The Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3, provides a set of procedures for federal courts to follow when the government seeks to protect classified information from disclosure." *United States v. Amawi*, 695 F.3d 457, 468 (6th Cir. 2012). CIPA's fundamental purpose is to protect and restrict "the discovery of classified information in a way that does not

2

impair the defendant's right to a fair trial." *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002). Congress made clear that "in any case involving classified information the defendant should not stand in a worse position because of such information than he would have if there were no such statutory procedures." *United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

The United States Court of Appeals for the Sixth Circuit has adopted the "relevant and helpful" standard, meaning that evidence that is relevant and helpful to the defense cannot be withheld from discovery. *Amawi*, 695 F.3d at 469-470. Courts have also recognized that they must give defendants the benefit of the doubt when determining if the evidence is relevant or helpful. *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006). "[I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made." *United States v. Price*, 566 F.3d 900, 913 n. 14 (9th Cir. 2009) (internal quotations omitted). However, before discovery disclosures are even decided, a CIPA Section 2 pretrial conference may be held, which defense counsel is entitled to attend in order to ensure a fair trial and to advocate for Mr. Haji and Mr. Muse.

### A. Section 2 of CIPA does not permit *ex parte* hearings.

This Court has scheduled an *ex parte* in-chambers conference on September 26, 2019, pursuant to CIPA Section 2. CIPA Section 2 states:

> At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, or on its own motion, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act, and the initiation of the procedure established by section 6 of this Act. In addition, at the pretrial conference the court may consider any matters which relate to classified information or which may promote a fair and

3

expeditious trial. *No admission made by the defendant or by any attorney for the defendant at such a conference may be used against the defendant unless the admission is in writing and is signed by the defendant and by the attorney for the defendant.* [18 U.S.C. App. 3 § 2 (emphasis added)].

The last sentence in this section illustrates that it is expected that defendants and defense counsel will attend this pretrial conference.

Further, nowhere in this section is there mention of an *ex parte* option for the hearing. "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9; 124 S. Ct. 2739; 159 L. Ed. 2d 718 (2004) (internal quotation marks and citation omitted). It is difficult to reconcile a reading of the Act that an *ex parte* hearing is allowed under Section 2 when there is no mention of allowing an *ex parte* hearing.

Additionally, two other sections in the Act explicitly reference *ex parte* hearings. In Section 4, the Act reads as follows:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. *The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.* [18 U.S.C. App. 3 § 4 (emphasis added)].

There is specific mention in this section that the court has discretion to conduct an *ex parte* hearing, with that exact phrase used, only after a written request by the government.

4

Section 6 of the Act also authorizes the following:

> The United States may, in connection with a motion under paragraph (1), submit to the court an affidavit of the Attorney General certifying that disclosure of classified information would cause identifiable damage to the national security of the United States and explaining the basis for the classification of such information. *If so requested by the United States, the court shall examine such affidavit in camera and ex parte.* [18 U.S.C. App. 3 § 6(c)(2) (emphasis added)].

It is clear that Congress knew how to specify an *ex parte* hearing when it wanted to make this option available. With no mention of an *ex parte* hearing in Section 2, the precise mention of defendants and defense counsel present at the hearing in Section 2, and the inclusion of *ex parte* hearing information in Sections 4 and 6, the hearing scheduled for September 26, 2019 should not be held *ex parte*. There is no reason that defense counsel should not be allowed at this upcoming hearing, as the statute anticipates that they will be.

### B. Courts have continuously disfavored *ex parte* hearings as the antithesis of the adversarial judicial system.

It would be an understatement to say that *ex parte* hearings are negatively viewed in the criminal justice system. There is a long history of courts denouncing this practice for a multitude of reasons. The United States Court of Appeals for the Sixth Circuit has warned that "[e]x parte proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in most extraordinary cases involving national security." *United States v. Presser*, 828 F.2d 330, 335 (6th Cir. 1987). The Ninth Circuit Court of Appeals has unequivocally stated that "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner*, 889 F.2d 882, 884 (9th Cir. 1989) (internal quotation marks and citation omitted).

One of the most pressing reasons against *ex parte* proceedings is out of concern for a defendant's constitutional rights. Nobody can truly advocate for a defendant like his own defense counsel. "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875; 86 S. Ct. 1840; 16 L.Ed.2d 973 (1966). "Asking district courts to place themselves in the shoes of defense counsel is a challenging and problematic task. Under our laws and traditions, all ex parte case procedures create problems." *United States v. Asgari*, No. 1:16-cr-124, 2019 U.S. Dist. LEXIS 115458, at *6 (N.D. Ohio July 11, 2019) "While district courts may believe they have appropriately reviewed the withheld evidence, their limited case knowledge makes questionable whether reviewing courts can actually identify what exculpatory or otherwise helpful information might assist the defense." *Id.*

In the present case, defense counsel should be able to attend the upcoming conference because without defense counsel there, nobody can truly advocate for Mr. Haji and Mr. Muse. "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004). The risk is that at the hearing, the government could dictate how the entire discovery process is conducted, without any say from defense counsel.

Defense counsel must also be privy to the information discussed at the hearing because Mr. Haji and Mr. Muse have a constitutional right to a fair trial.

6

Without knowing the full scope of the discovery material, defense counsel cannot fully and effectively prepare and present a defense because important factual pieces would be missing. Since the Court is not fully aware of all the nuances of the case and the defense, "it cannot on its own surmise, for example, whether the date of a particular communication would be helpful to the defense, or whether the number of times a certain topic was raised in conversation, or the specific wording used to express an idea, might support a defendant's theory of the case." *United States v. Brown*, No. 5:14-CR-58-FL, 2014 U.S. Dist. LEXIS 54143, at *12 (E.D.N.C. Apr. 18, 2014). The United States Supreme Court described the difficulty in more detail:

> An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. [*Alderman v. United States*, 394 U.S. 165, 182; 89 S. Ct. 961; 22 L. Ed. 2d 176 (1969)].

The Supreme Court has found the margin for error too great to place the responsibility of defense counsel in the hands of the trial court. *Id.*

Notably, *ex parte* hearings and pleadings under CIPA Section 4 and Section 6 are distinct from the proposed *ex parte* hearing under Section 2 in the instant case. As mentioned above, a court has *discretion* to allow *ex parte* hearings pursuant to Section 4 and Section 6 of CIPA. Section 4 and Section 6 *ex parte* hearings are determined on a case-by-case basis and only granted in extraordinary cases involving national security. More importantly, Congress specifically left out any mention of *ex parte* hearings for Section 2 pretrial conferences, even explicitly

adding the right of defendants and defense counsel to attend. The case law allowing *ex parte* hearings discuss either Section 4 or Section 6 hearings, not a Section 2 pretrial conference. Thus, defense counsel should be permitted to attend the upcoming hearing on September 26, 2019.

### C. Defense counsel is willing to take precautionary measures in order to protect any classified information.

There are other mechanisms that this Court can impose that would strike a balance between protecting any alleged national security issues and preserving Mr. Haji's and Mr. Muse's constitutional rights. "CIPA is a procedural statute, and the legislative history of it shows that Congress expected trial judges to fashion creative solutions in the interests of justice for classified information problems." *United States v. North*, 713 F. Supp. 1452, 1453 (D.D.C. 1989) (citations omitted). If there is information that is classified or implicates national security, this Court can fashion a procedure that complies with CIPA and avoids the need for *ex parte* proceedings, which should not be permitted except for extraordinary circumstances.

Many courts have come up with creative – and constitutional – solutions in order to serve both interests. In *United States v. Moussaoui*, Criminal No. 01-455-A, 2002 U.S. Dist. LEXIS 16530, at *3 (E.D. Va. Aug. 23, 2002), the court allowed standby defense counsel to review classified discovery and participate in hearings. While the defendant was not permitted to know about classified information due to national security reasons, the presence of the standby counsel preserved the defendant's Fifth and Sixth Amendment rights. *Id.* The court in *United States v. Bin Laden*, S(7) 98 Cr. 1023 (LBS), 2001 U.S. Dist. LEXIS 719, at *5-6 (S.D.N.Y. Jan. 25, 2001), also created a protective order that cleared defense counsel to

review a category of classified documents that they could not share with their clients. In *United States v. Musa*, 833 F. Supp. 752, 753 (E.D. Mo. 1993), there were about 7,000 classified documents and audio tapes as part of discovery. The court determined that a protective order, which prohibited unnecessary disclosure, was sufficient to protect both the government and the defendant's interests. *Id.* at 754. The court recognized that defense counsel was bound by ethical obligations and took "their duties as counsel very seriously," so they should be allowed to view classified information under the protective order. *Id.* at 755.

Moreover, the Second Circuit Court of Appeals has held that defense counsel may view classified documents and attend privileged hearings if they hold a security clearance because it is consistent with CIPA's security procedures. *In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh*, 552 F.3d 93, 121 (2d Cir. 2008). In *United States v. al-Fawwaz*, No. S7 98-cr-1023 (LAK), 2014 U.S. Dist. LEXIS 173550, at *3-4 (S.D.N.Y. Apr. 15, 2014), pursuant to a protective order, the court "grant[ed] defense counsel who ha[d] received security clearance access to all discoverable materials, including information that [was] classified." This was a proven solution to the "inherent conflict between the protection of information vital to national security and the disclosure to the defense of evidence that might otherwise be discoverable." *Id.* at 2-3. The Fourth Circuit Court of Appeals followed a similar procedure in *United States v. Abu Ali*, 528 F.3d 210, 254 (4th Cir. 2008), allowing cleared defense counsel to 1) review the alleged classified information, 2) participate in "hearings that determine what classified information is material and whether substitutions crafted by the government suffice to provide the defendant adequate means of presenting a defense and

9

obtaining a fair trial," and 3) conduct "unfettered" cross-examinations on the "government's witnesses concerning these matters."

In this case, there are several ways in which this Court can be assured that sensitive information will be protected without depriving Mr. Haji and Mr. Muse of their constitutional rights. This case is quite similar to the cases detailed above. There is already a protective order in place, which is consistent with CIPA Section 3. Section 3 states, "Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." 18 U.S.C. App. 3 § 3. Just as in other cases, the protective order issued by this Court provides sufficient measures to ensure the protection of classified information while safeguarding Mr. Haji's and Mr. Muse's constitutional rights. This Court can also impose an additional protective order if needed, including only allowing defense counsel and not the defendants at the hearing and setting prohibitions on disclosing information from the September 26 hearing. Defense counsel is bound by their ethical obligations and would not violate any protective order handed down by this Court.

Further, defense counsel can be provided security clearance in order to protect national security. "[T]here are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received such clearances." *United States v. Libby*, 429 F. Supp. 2d 18, 23 (D.D.C. 2006). "Similarly, a lawyer for the designated entity who has the appropriate security clearance also does not implicate national security when viewing the classified

10

material because, by definition, he or she has the appropriate security clearance." *Al Haramain Islamic Found., Inc. v. United States Dep't. of the Treasury*, 686 F.3d 965, 983 (9th Cir. 2012). This is a standard safety measure to promote national security as well as due process of law. CIPA does not require defense counsel to obtain a security clearance. *See United States v. Smith*, 706 F. Supp. 593, 596 n.1 (M.D. Tenn. 1989), *rev'd on other grounds*, 899 F.2d 564 (6th Cir. 1990); *United States v. Jolliff*, 548 F. Supp. 232, 233 (D. Md. 1981). However, defense counsel are not opposed to undergoing a background check to obtain security clearance. Defense counsel are willing to go that extra step in order to effectively represent Mr. Haji and Mr. Muse.

Finally, just as in the cases discussed above, defense counsel can be ordered to not share information that would implicate national security. This Court could also allow only defense counsel to participate in the review and determination of the discoverability process, which permits defense counsel to advocate for their clients. To follow CIPA and the Constitution, the aforementioned solutions protect sensitive information while allowing defense counsel to effectively represent Mr. Haji and Mr. Muse and protect and provide their constitutional rights.

Conclusion

This Court should permit defense counsel to attend the hearing scheduled for September 26, 2019. *Ex parte* hearings are not permitted under Section 2 of CIPA, and *ex parte* hearings in general are greatly discouraged in the criminal justice system. Additionally, there are many solutions this Court can take in order to protect the interests of national security while protecting Mr. Haji's and Mr. Muse's constitutional rights. Therefore, Mr. Haji and Mr. Muse respectfully

request that this Court grant their motion, removing the *ex parte* component of the hearing and allowing defense counsel to attend the hearing.

Respectfully submitted,

CHARTIER & NYAMFUKUDZA, P.L.C.

| | |
|---|---|
| 09/16/19 | /s/MARY CHARTIER |
| Date | Mary Chartier |

LAW OFFICES OF JAMES K. CHAMPION, P.L.L.C.

| | |
|---|---|
| 09/16/19 | /s/JAMES K. CHAMPION |
| Date | James K. Champion |

## Certification of Delivery

I hereby certify that on September 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to parties enrolled through the ECF system. A hard copy has been mailed via the United States Postal Service to those who are not enrolled.

/s/MARY CHARTIER
Mary Chartier
Chartier & Nyamfukudza, P.L.C.
2295 Sower Boulevard
Okemos, MI 48864
Phone: 517.885.3305
Fax: 517.885.3363
mary@cndefenders.com