UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,   **[FILED UNDER SEAL]**

    Plaintiff,   Case No. 1:19-CR-25-02

v.   HON. GORDON J. QUIST

MOHAMED SALAT HAJI,

    Defendant.
_____/

## OPINION

Defendant, Mohamed Salat Haji, is charged with attempting and conspiring to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1). Haji has moved to dismiss the indictment on three grounds: (1) entrapment; (2) outrageous government conduct; and (3) the alleged conduct does not fall within the ambit of the statute. (ECF Nos. 111, 117, and 118.) The government has filed a response. (ECF No. 130.) The Court heard oral argument on June 15, 2020. For the reasons stated below, the Court will deny Haji's motions.

### I. Legal Standard

A federal district court may hear, by pretrial motion, defenses that can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(1). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "The Court may not adjudicate the validity of a defense in advance of trial if doing so would 'invade the province of the ultimate finder of fact.'" *United States v. Duval*, 865 F. Supp. 2d 803, 807 (E.D. Mich. 2012) (citing *Jones*, 542 F.2d at 664).

## II. DISCUSSION

### A. Entrapment

Haji argues that the Court should dismiss the indictment because the government entrapped him into committing the offense. Alternatively, Haji requests that the Court hold an evidentiary hearing on the entrapment defense or give the Sixth Circuit Model Jury Instruction 6.03 on entrapment to the jury.

"An entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (internal quotations and citations omitted). "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States*, 356 U.S. 369, 372, 78 S. Ct. 819, 821 (1958).

"The key question in determining predisposition is whether law enforcement planted a 'criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so.'" *Demmler*, 655 F.3d at 457 (quoting *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010)). "The predisposition inquiry involves assessing whether a defendant was 'inclin[ed] to commit the crime with which he is charged.'" *United States v. White*, — F. App'x —, 2020 WL 3057405 at *2 (6th Cir. 2020) (quoting *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993)). To assess whether a defendant was predisposed to commit the offense, the Sixth Circuit has instructed district courts to consider the following factors:

1. The character or reputation of the defendant;

2. whether the suggestion of the criminal activity was initially made by the government;

> 3. whether the defendant was engaged in criminal activity for profit;
>
> 4. whether the defendant evidenced reluctance to commit the offense but was overcome by government persuasion; and
>
> 5. the nature of the inducement or persuasion offered by the government.

*United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990). The Sixth Circuit Model Jury Instruction on entrapment provides a sixth factor: whether "the defendant took part in any similar criminal activity with anyone else before or after." Model Jury Instruction 6.03.

"It is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question." *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009) (citing *United States v. Fadel*, 844 F.2d 1425, 1431 (10th Cir. 1988)). "To warrant dismissal before trial on the ground that the defendant was entrapped as a matter of law, we have held that 'the undisputed evidence must demonstrate a "patently clear" absence of predisposition.'" *Id.* (quoting *United States v. Harris*, 9 F.3d 493, 498 (6th Cir. 1993)); *see also United States v. Tucker*, 28 F.3d 1420, 1428 (6th Cir. 1994) ("[E]ntrapment and predisposition are ordinarily questions for the jury[.]").

Having reviewed the voluminous record in this case, the Court finds that it is neither "undisputed" nor "patently clear" that Haji was not predisposed to commit the crime. In support of his motion, Haji points to a series of communications he had with three undercover agents between October 2018 and January 2019. Considering these communications, Haji argues that several factors weigh in his favor:

- He does not have a significant criminal record.
- The government appears to suggest the criminal activity.

- He appears reluctant to commit the offense.

- The government appears to use an undercover agent to "praise and flatter."

The government paints a different picture of Haji and his predisposition to commit the offense:

- In the twenty months before the government made its initial contact with Haji, Haji communicated with his alleged co-conspirators, the Muse brothers, about watching ISIS torture videos, "supporting the state," praising terrorist attacks, being ready for and joining "dawla" (ISIS), jihad training, going to Somalia, joining the battlefield, and killing "kuffar" (non-believers).

- As to whether Haji was reluctant to commit the offense, the government cites records to suggest that Haji was not reluctant; instead, Haji was concerned that the undercover agents were in fact undercover agents.

- The government argues that Haji took several independent affirmative steps to further the goal of the conspiracy, such as obtaining an audio recording of the "bayah pledge" (a pledge of allegiance to ISIS).

- Haji set up an in-person meeting to assess and vet an undercover agent.

Because the evidence in the record is neither "undisputed" nor "patently clear" that Haji was not predisposed to commit the alleged crimes, the Court will deny Haji's motion to dismiss the indictment on the ground of entrapment.

Haji also argues that the Court should give an entrapment jury instruction at trial. "A defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, . . . but the defendant must provide enough evidence to support both elements of entrapment in order to receive the instruction." *Demmler*, 655 F.3d at 456–57 (internal quotations and citations omitted).  "A district court is justified in denying an entrapment instruction where the evidence 'clearly and unequivocally establishes that [the

defendant] was predisposed.'" *Id.* at 457 (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). The Court need not rule on this issue now. "[S]uch an argument is more appropriately addressed after evidence is presented at trial." *Schaffer*, 586 F.3d at 427.

### B. Outrageous Government Conduct

Haji also requests the Court to dismiss the indictment based on the outrageous government conduct defense. "Under the outrageous government conduct defense, a defendant argues that the government's involvement in creating his crime (i.e., the means and degrees of inducement) was so great 'that a criminal prosecution for the [crime] violates the fundamental principles of due process.'" *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 430, 93 S. Ct. 1637 (1973)). This "defense is distinct from the affirmative defense of entrapment, which requires the defendant to establish that he was not predisposed to commit the crime." *Id.* (citing *Tucker*, 28 F.3d at 1422). Instead, the outrageous government conduct defense "looks only at the government's conduct and determines whether it is sufficiently outrageous so as to violate the Constitution." *Id.*

Haji recognizes that the Sixth Circuit "has expressly foreclosed the 'outrageous government conduct' defense in cases where the defendant alleges inducement." *Id.* at 975. Haji seeks to preserve this issue for appeal. Therefore, the Court will deny Haji's motion to dismiss on the ground of outrageous government conduct.

### C. Alleged Conduct Does Not Fall Within the Ambit of the Statute

In the third motion, Haji argues that the indictment should be dismissed because (1) the conduct alleged in the indictment is protected by his rights to free speech and freedom of association under the First Amendment, and (2) the statute is unconstitutionally vague as applied under the Due Process Clause of the Fifth Amendment.

Count 1 of the indictment alleges that, "[b]eginning in or about January 2017, and continuing through on or about January 21, 2019," Haji conspired with his co-defendants "to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel, to a foreign terrorist organization, namely, ISIS" in violation of 18 U.S.C. § 2339B(a)(1). (ECF No. 25 at PageID.48-49.) Count 2 of the indictment alleges that, "on or about January 21, 2019," Haji and his co-defendants "did knowingly attempt to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel, to a foreign terrorist organization, namely, ISIS." in violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2. (ECF No. 25 at PageID.50.)

Section 2339B "is, on its face a preventive measure—it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35, 130 S. Ct. 2705, 2728 (2010). To prove a violation of § 2339B(a)(1), "the government must establish that a defendant (1) knowingly provided or attempted or conspired to provide material support (2) to a foreign terrorist organization (3) that the defendant knew had been designated a foreign terrorist organization or had engaged in terrorism." *United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018) (citing *Holder,* 561 U.S. at 16–17, 130 S. Ct. at 2717–18). The statute defines "material support or resources" as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339B(g)(4); 18 U.S.C. § 2339A(b)(1).

6

"A person provides 'personnel' to a foreign terrorist organization if []he makes available one or more persons—who may be or include herself—to work under that organization's 'direction or control.'" *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (citing 18 U.S.C. § 2339B(h)). "As the statute makes clear, a person does not work under the 'direction or control' of a terrorist organization if [he] 'act[s] entirely independently of the . . . organization to advance its goals or objectives.'" *Id.* (citing 18 U.S.C. § 2339B(h)).

In *Holder*, the Supreme Court considered the constitutionality of § 2339B and held that the government need not need prove that an individual had the specific intent to further illegal activity of a foreign terrorist organization. 561 U.S. at 16–17, 130 S. Ct. at 2717–18. In rejecting the free speech First Amendment arguments, the Court stated: "The statute reaches only material support coordinated with or under the direction of a designated foreign terrorist organization. Independent advocacy that might be viewed as promoting the group's legitimacy is not covered." *Id.* at 31–32, 130 S. Ct. at 2726. The Court also found it "significant" that Congress narrowly drafted the statute to minimize constitutional concerns: (1) the statute applies only to foreign terrorist organizations, (2) the statute includes narrowing definitions of several terms including "training" and "personnel," (3) Congress "displayed a careful balancing of interests in creating limited exceptions to the ban on material support," and (4) "most importantly" the statute does not apply to independent advocacy. *Id.* at 35–36, 130 S. Ct. at 2728. In rejecting the free association First Amendment arguments, the Court relied on the fact that that the statute "does not criminalize mere membership in a designated foreign terrorist organization. It instead prohibits providing 'material support' to such a group." *Id.* at 18, 130 S. Ct. at 2718. In rejecting the due process arguments, the Court found that the terms "personnel" and "service" were sufficiently defined to put a person of ordinary intelligence on notice. *Id.* at 23–24, 130 S. Ct. at 2721–22. "[E]ven to the extent a

heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice." *Id.* at 20, 130 S. Ct. at 2719.

Haji argues that the conduct alleged in the indictment is protected by his rights to free speech and freedom of association under the First Amendment. He claims that, although he may have expressed his support for ISIS, the support was in the form of words and that he did not have a specific "plan." He states that he "never committed to going to Somalia to join ISIS, at most saying that he would *hopefully* make the trip *in a few years*." (ECF No. 117 at PageID.1076.) (emphasis in original). He further states that his conduct was not under the direction or control of a foreign terrorist organization because his communications were with undercover agents and he was following the Quran and Allah.

Haji has not been accused of violating Section 2339B on the basis that he was a member of ISIS, personally adopted the beliefs espoused by ISIS, voiced those beliefs publicly, or pledged allegiance to ISIS. Theses acts, however, are relevant to his intent and motive. *See United States v. Hassan*, 742 F.3d 104, 127 (4th Cir. 2014) ("Hassan's and Yaghi's Facebook postings advocating violent jihad, as well as their conversations with Boyd to that effect, serve as compelling support for the jury's finding that Hassan and Yaghi travelled abroad with the hope of acting on their beliefs by engaging in jihad and fighting against the 'kuffar.'"); *see also United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("Forming an agreement to engage in criminal activities—in contrast with simply talking about religious or political beliefs—is not protected speech.").

Haji is charged with attempting and conspiring to provide *material support*—including personnel—to ISIS. The government alleges that "Haji actively assisted co-defendant Muse Muse

with obtaining and pooling funds to purchase his plane tickets to travel to join ISIS in Somalia, and by traveling with Muse Muse and Mohamud Muse from Lansing to drop Muse Muse off at the Gerald R. Ford International Airport in Grand Rapids, Michigan in January 2019 for the first leg of his journey to join ISIS." (ECF No. 130 at PageID.1250-1251.) Haji may not have engaged in the "hard core" conduct displayed in some other cases, but the statute does not penalize only "hard core" conduct. The statute prohibits any person from providing *material support* to a terrorist organization.

Haji also argues that he was not working under the "direction or control" of ISIS because he was communicating only with undercover agents that had no connection to ISIS. But courts have rejected this argument because a "mistaken belief that the government informant and undercovers were actual ISIS members is not a defense to his attempted crime." *United States v. Suarez*, 893 F.3d 1330, 1335 (11th Cir. 2018).

Haji finally argues that Counts 1 and 2 are unconstitutionally vague as applied in violation of the Due Process Clause of the Fifth Amendment. Specifically, Haji claims that the terms "personnel" and "material support" are vague as applied because none of his communications were with ISIS. As stated above, Haji did not actually communicate with members of ISIS because he communicated only with undercover agents whom he believed to be members of ISIS. Although the Supreme Court left open the possibility that the statute may be vague as applied in some circumstances, *Holder*, 561 U.S. at 21, 130 S. Ct. at 2720, this is not the case. Haji is alleged to have materially supported ISIS by, among other allegations, obtaining and pooling funds used to purchase a co-defendant's plane ticket to join ISIS and traveling with the co-defendant to drop him off at the airport. In the Court's view, "the statutory terms are clear in their application to [Haji's]

9

conduct, which means that [Haji's] vagueness challenge must fail." *Holder*, 561 U.S. at 21, 130 S. Ct. at 2720.

### III. CONCLUSION

For the reasons stated above, Haji's motions to dismiss (ECF Nos. 111, 117, and 118) will be **DENIED**.

Dated: June 17, 2020                                    /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE